IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| DARRELL NEVADA BYRD, | : |
| Plaintiff, | : |
| vs. | : Civil Action File No. |
| | : **7:02-CV-81 (HL)** |
| AL JONES, Medical Director, et al., | : |
| Defendants. | : |

_____

**RECOMMENDATION**

Presently pending in this *pro se* prisoner action is defendant's motion for summary judgment (tab 19).

In plaintiff's complaint, he names defendant Al Jones as the "medical administrator at [Valdosta State Prison] and is employed by M.C.G. He overseas [sic] the day to day operation of the medical dept. and is responsible for ensuring the provision of medical care and scheduling outside appointments for plaintiff. When a prisoner needs surgery or specialize [sic] treatment or evaluation."

Plaintiff alleges that on August 7, 2000, he injured his left knee while playing basketball. According to defendant, plaintiff was taken to medical and given medication for the swelling, an ice pack, and analgesic cream. (Tab 42 Exhibit B). On August 8, 2000, plaintiff was examined by two nurses, whereupon he was referred to a medical doctor and treated with cold compresses and ibuprofen. (Tab 42, exhibits C and C-1). Plaintiff's knee was examined by Dr. Elmore on August 14, 2000. Plaintiff was placed in the infirmary, prescribed Naprosyn, instructed to

elevate his knee as much as possible, and was given crutches. Plaintiff was scheduled for a follow up in two weeks. (Tab 42, Exhibits D and D-1). Plaintiff was again examined by Dr. Elmore on September 5, 2000, indicated a two-week follow up, and indicated that an orthopedic consultation should be considered if plaintiff did not improve. (Tab 42 Exhibit E) On September 19, 2000, plaintiff was again seen by a doctor, who requested an MRI to be followed by an orthopedic consultation. Again, plaintiff's medication was continued, and a two-week follow up was ordered. (Tab 42 Exhibit F). On October 3, 2000, plaintiff was again examined by a doctor, who ordered an MRI and continued plaintiff's medication. (Tab 42 Exhibit G and G-1). On November 3, 2000, plaintiff was assessed by a doctor, who requested an orthopedic consultation and renewed plaintiff's medications. (Tab 42 Exhibit s H, H-1, and H-2). On November 15, 2000, plaintiff went for his first MRI. (Tab 42, Exhibit I). On November 21, 2000, plaintiff reviewed the MRI results with a doctor. (Tab 42, Exhibit J). On November 30, 2000, plaintiff was given a knee brace. (Tab 42, Exhibit K). On December 30, 2000, plaintiff was seen by the doctor, who continued plaintiff's medication and profile. (Tab 42 Exhibit L). On January 4, 2001, plaintiff was seen at Augusta State Medical Prison by an orthopedic surgeon, who recommended arthroscopy surgery on plaintiff's knee. (Tab 42 Exhibit M). On January 5, 2001, plaintiff was seen at Valdosta State Prison by Dr. Asebiomo for follow up. Dr. Asebiomo submitted the paperwork for approval for plaintiff to have the recommended surgery which was scheduled for June 28, 2001. (Tab 42 Exhibits N, –1, and –2). On May 25, 2001 plaintiff was again examined by Dr. Asebiomo, who continued plaintiff on pain medication. (Tab 42, Exhibit O). On June 21, 2001, plaintiff was transferred to Augusta State Medical Prison for the recommended surgery, which took place on June 28, 2001. (Tab 42, Exhibits P and Q).

Plaintiff does not disagree with the majority of the facts as outlined in the exhibits discussed above; plaintiff does state that he did not have any prescribed pain medications from November 21, 2000 until December 5, 2000, although plaintiff does state that he received ibuprofen from the nurse at sick call (tab 45 page 4). Plaintiff also states that he did not receive a knee brace until March 24, 2001, after a meeting discussing his grievance with his counselor and defendant Al Jones. (Tab 45 page 6).

Plaintiff also states that despite repeated requests by the doctors at Valdosta State Prison, he did not receive an MRI until over three months after his injury.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992)(citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the

existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97 (1976). However, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." Harris, 941 F.2d at 1505. It must involve the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25 (1993). Knowledge of the medical need alleged or circumstances clearly indicating the existence of such need is essential to a finding of deliberate indifference. Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1191 (11th Cir. 1994), quoting Horn ex rel. Parks v. Madison Co. Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994), cert. denied, 513 U.S. 873 (1994). In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

As noted in Hill, supra., "delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay." Supra at 1189.  Plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed" in proving that a delay constituted an Eighth Amendment violation. Id. At 1188.

The cases in this Circuit have given substance to Estelle's distinction between "deliberate indifference" and mere negligence, explicating categories of action or inaction that may constitute deliberate indifference.  "[A]n official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir.1997); Mandel v. Doe, 888 F.2d 783, 788 (11th Cir.1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference"). Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. See Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir.1994); Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir.1990).

The Eleventh Circuit has also held that deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment. See <u>Steele v. Shah</u>, 87 F.3d 1266, 1269-70 (11th Cir.1996); <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir.1989). Moreover, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." <u>Mandel</u>, 888 F.2d at 789; <u>Ancata v. Prison Health Servs., Inc.</u>, 769 F.2d 700, 704 (11th Cir.1985).  "It is......true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation."   <u>McElligott v. Foley</u>, 182 F.3d 1248, 1256-1257 (11th Cir. 1999).

   The facts show that plaintiff received medical attention on numerous occasions for his knee, and ultimately was provided surgery for his knee.  While there was a delay between the time the first physician requested an MRI and the time one was actually completed, and a delay in having the surgery, plaintiff has not provided any evidence to show that such delay worsened his knee condition.

    Consequently, it is the RECOMMENDATION of the undersigned that defendant Jones' motion for summary judgment be **GRANTED**.   Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 21th day of July, 2005.

                                                             //S Richard L. Hodge
                                                             RICHARD L. HODGE
                                                             UNITED STATES MAGISTRATE JUDGE

msd